UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. ________________

EDITH SPOSARO,

Plaintiff,

v.

ROYAL CARIBBEAN CRUISES LTD.
d/b/a ROYAL CARIBBEAN GROUP,

Defendant.
___________________________________/

**COMPLAINT AND REQUEST FOR ADVISORY JURY**

Plaintiff, EDITH SPOSARO, sues Defendant, ROYAL CARIBBEAN CRUISES LTD. d/b/a ROYAL CARIBBEAN GROUP, and alleges:

**PRELIMINARY ALLEGATIONS**

1. Plaintiff, EDITH SPOSARO, was and is a citizen and resident of the State of Florida and is otherwise sui juris.
2. Defendant, ROYAL CARIBBEAN CRUISES LTD. d/b/a ROYAL CARIBBEAN GROUP ("RCCL"), is a foreign entity incorporated in Liberia with its principal place of business in Miami, Florida.
3. This Court has subject-matter jurisdiction under 28 U.S.C. § 1333 (admiralty) because Plaintiff's claims are maritime torts: she was injured aboard a vessel in navigable waters, and her injury arose from RCCL's operation of a cruise ship carrying passengers for hire. Plaintiff designates this action as an admiralty claim under Federal Rule of Civil Procedure 9(h).

4. Venue is proper in this District because the passenger ticket contract RCCL issued to Plaintiff requires that suit be brought in the United States District Court for the Southern District of Florida in Miami-Dade County, Florida.

5. At all times material, RCCL, personally or through an agent:

   a. Operated, conducted, engaged in, or carried on a business venture in this state and county, and had an office or agency in this state and county;

   b. Was engaged in substantial activity within this state;

   c. Operated vessels in the waters of this state;

   d. Committed one or more of the acts stated in Florida Statutes §§ 48.081, 48.181, or 48.193;

   e. The acts of Defendant set out in this Complaint occurred in whole or in part in this county and/or state; and

   f. Was engaged in the business of providing to the public, and to Plaintiff in particular, vacation cruises aboard the vessel *Oasis of the Seas* for compensation.

6. RCCL is subject to the personal jurisdiction of this Court.

7. Plaintiff's claims arise under the general maritime law of the United States.

**FACTS COMMON TO ALL COUNTS**

<u>The Vessel and Central Park</u>

8. At all times material, RCCL owned, operated, managed, maintained, and controlled the *Oasis of the Seas*.

9. At all times material hereto, Defendant had exclusive custody and control of the Oasis *of the Seas.*

10. The *Oasis of the Seas* is the first of RCCL's Oasis-class ships. Its sister ships, the *Allure of the Seas*, *Harmony of the Seas*, *Symphony of the Seas*, *Wonder of the Seas*, and *Utopia of the Seas*, share the same basic design and layout.

11. Each Oasis-class ship has an open-air area on Deck 8 called Central Park. Central Park is open to the sky and uncovered. It is lined with restaurants, shops, and bars, and it is one of the main walkways passengers use to move through the ship.

12. The Central Park walkways are surfaced with smooth tile. When rain falls on the tile, the tile becomes wet and unreasonably slippery, and the water on its surface blends into the tile so that passengers cannot readily see it or appreciate how slippery the walkway has become.

13. RCCL knows its passengers walk through Central Park in all weather, and that because the area is uncovered, its walkways become wet every time it rains.

14. Before the Plaintiff's fall, RCCL knew that the subject floor was slippery when wet. RCCL admitted as much by posting small signs around the subject deck that read, "Watch Your Step Deck Slippery When Wet," like the one pictured at the bottom of the photo below.



RCCL's Design and Selection of the Flooring

15. RCCL custom-designed and custom-built the *Oasis of the Seas* to its own specifications. RCCL participated in and approved the design of Central Park, including the selection and installation of its flooring. Under its contract with the shipyard, RCCL had the right to inspect and to approve or reject the designs, materials, and construction of every part of the ship, including Central Park and its flooring.

16. RCCL established internal standards for the selection of flooring materials aboard its ships, including standards for the slip resistance (coefficient of friction) of flooring in heavily trafficked areas exposed to water. Upon information and belief, RCCL created or approved these standards.

17. RCCL chose to install the same or similar tile in the open-air Central Park walkways of each Oasis-class ship, and chose not to cover those walkways, knowing that they would be exposed to rain. RCCL has continued to operate the *Oasis of the Seas* with this flooring and layout since the ship entered service.

The Incident

18. On or about November 9, 2025, Plaintiff was a paying passenger aboard the *Oasis of the Seas*, which at all times material was in navigable waters. It was the first day of her cruise.

19. At approximately 3:00 p.m. that afternoon, shortly after it began raining, Plaintiff was walking through Central Park on Deck 8 when she slipped on the rain-wet tile and fell, landing on her right knee.

20. RCCL's medical staff X-rayed Plaintiff's knee and diagnosed a displaced, comminuted fracture of her right patella. Plaintiff was turned over to paramedics for emergency care, and the fracture eventually required surgical repair.

21. The degree to which the Central Park tile became slippery when wet was not open and obvious. The rainwater blended into the tile, and a passenger walking on it could not appreciate how little traction it provided.

22. As a direct and proximate result of RCCL's negligence, as alleged in each Count below, Plaintiff fractured her right kneecap, underwent surgery, and was otherwise injured in and about her body and extremities. She has suffered physical pain, mental anguish, disability, physical impairment, disfigurement, inconvenience, loss of capacity for the enjoyment of life, impairment of her earning capacity, aggravation of previously existing conditions, and the expense of hospitalization and medical and nursing care and treatment. She also lost the benefit of her vacation, cruise, and transportation costs. Her injuries are permanent or continuing in nature, and she will suffer these losses in the future.

<u>RCCL's Notice of the Dangerous Condition</u>

23. *Permanent warning signs.* RCCL has permanently mounted signs throughout Central Park that read "Watch Your Step Deck Slippery When Wet." Those signs were posted in the area where Plaintiff fell. By posting them, RCCL admits that it knew, before Plaintiff's fall, that the Central Park tile becomes slippery when wet.

24. RCCL has posted these same permanent signs throughout the Central Park areas of its Oasis-class ships since at least 2022. *See* Compl. ¶ 17, *Sorenson v. Royal Caribbean Cruises Ltd.*, No. 1:22-cv-22188 (S.D. Fla. July 15, 2022), ECF No. 1. Passengers have continued to slip and fall on the wet Central Park tile despite these signs, as alleged below. RCCL therefore knew that the permanent signs, by themselves, did not provide adequate warning to passengers, and still failed to improve the warnings or correct the dangerously slippery tile.

25. *Policies and training.* Upon information and belief, RCCL has policies and procedures that require crew members to monitor walkways, promptly dry wet floors, place temporary wet-floor signs and cones, and close off wet areas. Upon information and belief, RCCL trains its crew that its tile walkways become slippery when wet and that, without verbal or visual warnings, passengers may not be able to perceive that the floor is wet or how slippery it is. RCCL adopted these measures because it knows the hazard is not open and obvious to passengers.

26. *Crew and cameras.* Upon information and belief, RCCL assigns crew members to monitor the Central Park walkways and monitors Central Park through continuously recording CCTV cameras. Had RCCL reasonably monitored the area, in person or by camera, it would have seen that rain had made the tile wet and slippery before Plaintiff fell.

27. *Shipboard safety records.* RCCL tracks slips and falls across its fleet and reviews them in shipboard safety meetings. RCCL's Shipboard Safety Steering Committee minutes, as reflected in *White v. Royal Caribbean Cruises, Ltd.*, No. 1:23-cv-24522 (S.D. Fla.), record, among other incidents:

   a. Thirty slips, trips, and falls in the Central Park area aboard the *Symphony of the Seas* in 2019, and five more in the first two months of 2020;

   b. A fall on or about February 28, 2022, by a guest in the Central Park area aboard this same ship, the *Oasis of the Seas*, which was wet from rain;

   c. A fall on or about April 11, 2022, by a guest near the Central Park Café aboard the *Symphony of the Seas* due to water on the floor; and

   d. A fall on or about May 30, 2022, by a guest on wet flooring in the Central Park area aboard the *Harmony of the Seas*.

28. *Prior lawsuits.* RCCL was also on notice through prior lawsuits involving substantially similar incidents. The Central Park areas of the Oasis-class ships are substantially similar in design, layout, flooring material, exposure to the weather, and passenger traffic. Each of the following

incidents involved a passenger who slipped and fell on a wet walking surface in the open-air Central Park area of an Oasis-class ship, the same type of condition that caused Plaintiff's fall:

a. *Shipe v. Royal Caribbean Cruises Ltd.*, No. 1:24-cv-20645 (S.D. Fla. filed Feb. 20, 2024). On or about May 23, 2023, a passenger aboard this same ship, the *Oasis of the Seas*, slipped and fell on a wet, unreasonably slippery tile walkway in Central Park and required surgery. That passenger alleged the walkway sat directly beside the uncovered, open-air portion of Central Park, that RCCL had failed to cover it against rainwater, and that RCCL's security officer was already in the area because other passengers had slipped there. Same ship, same area, same tile, same source of water.

b. *Bernhardt v. Royal Caribbean Cruises, Ltd.*, No. 1:26-cv-21842 (S.D. Fla. filed Mar. 19, 2026). On or about February 21, 2025, a passenger aboard this same ship, the *Oasis of the Seas*, slipped and fell on the smooth tile in Central Park on Deck 8 after rain had made the tile wet. No wet-floor signs were present, and he fell even though he was watching where he was going. Same ship, same area, same tile, same rain hazard.

c. *White v. Royal Caribbean Cruises, Ltd.*, No. 1:23-cv-24522 (S.D. Fla. filed Nov. 30, 2023). On or about November 17, 2022, a passenger aboard the *Harmony of the Seas*, an Oasis-class sister ship, slipped and fell in water while walking through Central Park on Deck 8 after it had been raining. Same open-air Central Park design and tile, same rain hazard.

d. *Araujo v. Royal Caribbean Cruises, Ltd.*, No. 1:25-cv-25633 (S.D. Fla. filed Dec. 2, 2025). On or about December 14, 2024, a passenger aboard the *Wonder of the Seas*, an Oasis-class sister ship, slipped and fell on a wet, unreasonably slippery walking surface in Central Park and required surgery. Same open-air Central Park design and tile, same wet-floor hazard.

e. *Todd v. Royal Caribbean Group*, No. 1:26-cv-22077 (S.D. Fla. filed Mar. 27, 2026). On or about January 31, 2025, a passenger aboard the *Harmony of the Seas* slipped and fell in Central Park on Deck 8 because the walkway was wet from the area's open-deck exposure and misting systems. There were no warnings, and the wet condition was not apparent to her. Same open-air Central Park design and tile, same wet-floor hazard.

f. *Broussard v. Royal Caribbean Cruises, Ltd.*, No. 1:25-cv-20859 (S.D. Fla. filed Feb. 24, 2025). On or about March 9, 2024, a passenger aboard the *Harmony of the Seas* slipped and fell on a Central Park tile walkway in an accumulation of water that blended into the floor, even though he was watching where he walked. Same open-air Central Park design and tile; same hazard of water that passengers cannot readily see on the tile.

g. *Vega v. Royal Caribbean Group*, No. 1:24-cv-23927 (S.D. Fla. filed Oct. 10, 2024). On or about December 14, 2023, a passenger slipped and fell in Central Park aboard this same ship, the *Oasis of the Seas*. Same ship, same area, same walking surface.

h. *Castro v. Royal Caribbean Cruises Ltd.*, No. 1:24-cv-23146 (S.D. Fla. filed Aug. 19, 2024). On or about August 19, 2023, a passenger aboard the *Harmony of the Seas* slipped and fell on a wet floor in Central Park near the entrance to one of the restaurants that line the walkway. Like Plaintiff, who fell in front of Chops Grille, that passenger fell on the wet walkway outside a Central Park restaurant.

i. *Couto v. Royal Caribbean Cruises Ltd.*, No. 1:24-cv-20197 (S.D. Fla. filed Jan. 17, 2024). On or about November 20, 2022, a passenger aboard the *Harmony of the Seas* slipped and fell on a wet floor in Central Park. Same open-air Central Park design and tile, same wet-floor hazard.

j. *Sorenson v. Royal Caribbean Cruises Ltd.*, No. 1:22-cv-22188 (S.D. Fla. filed July 15, 2022). On or about March 5, 2022, a passenger aboard the *Symphony of the Seas* slipped and fell on a wet walkway in Central Park on Deck 8. The same permanent "Watch Your Step Deck Slippery When Wet" signs were posted throughout Central Park at the time and did not prevent the fall. Same open-air Central Park design and tile, same wet-floor hazard, same inadequate signage.

k. *Tweten v. Royal Caribbean Cruises Ltd.*, No. 1:23-cv-21728 (S.D. Fla. filed May 8, 2023). On or about February 12, 2022, a passenger aboard the *Harmony of the Seas* slipped and fell on wet, slippery flooring while walking through Central Park. Same open-air Central Park design and tile, same wet-floor hazard.

l. *Selwood v. Royal Caribbean Cruises, Ltd.*, No. 1:20-cv-24513 (S.D. Fla. filed Nov. 2, 2020). On or about January 2, 2020, a passenger aboard the *Symphony of the Seas* slipped and fell on a wet open-deck floor in Central Park. Same open-air Central Park design and tile, same wet-floor hazard.

m. *Squarer v. Royal Caribbean Cruises, Ltd.*, No. 1:20-cv-21752 (S.D. Fla. filed Apr. 27, 2020). On or about December 27, 2019, a passenger aboard the *Symphony of the Seas* slipped and fell on a wet open-deck floor in Central Park. Same open-air Central Park design and tile, same wet-floor hazard.

29. *Ongoing, repetitive problem.* These incidents show that passengers have been falling on wet tile in Central Park on every Oasis-class ship, including the *Oasis of the Seas* itself, for more than six years. RCCL knew that its permanent signs and existing procedures were not preventing these falls. Yet before Plaintiff's fall, RCCL did not change the flooring, cover the walkways, or adopt effective measures to protect passengers when it rains.

## COUNT I – NEGLIGENT FAILURE TO WARN

Plaintiff re-alleges and incorporates paragraphs 1 through 28 as though fully set forth herein.

30. At all times material, RCCL owed Plaintiff a duty of reasonable care under the circumstances.

31. That duty included a duty to warn passengers of dangers that RCCL knew or reasonably should have known of in places where passengers are invited to go or may reasonably be expected to go.

32. Central Park is a place RCCL invited Plaintiff to go and reasonably expected her to be during her cruise.

33. RCCL had actual or constructive notice of the dangerous condition, as alleged in paragraphs 21 through 28.

34. RCCL breached its duty through the following acts and omissions:

   a. Failing to adequately and properly warn that the Central Park tile was wet and slippery when Plaintiff fell;

   b. Failing to warn of how slippery the Central Park tile becomes when wet;

   c. Relying on permanent, generic “Slippery When Wet” signs that are displayed in all weather and do not warn passengers when the tile is actually wet;

   d. Failing to place temporary wet-floor signs, cones, or other conspicuous warnings in Central Park once it began raining;

   e. Failing to give verbal warnings or public-address announcements that the open decks, including Central Park, were wet and slippery from rain; and/or

   f. Failing to warn of prior slip-and-fall incidents on wet tile in Central Park.

35. Had RCCL adequately warned Plaintiff that the tile was wet and how slippery it had become, she would have avoided the wet walkway, and she would not have fallen.

36. As a direct and proximate result of RCCL’s negligence as alleged in this Count, Plaintiff suffered the injuries and damages described in paragraph 20.

**WHEREFORE**, Plaintiff requests an advisory jury and demands judgment against RCCL for all damages recoverable under the general maritime law, prejudgment interest, taxable costs, and such further relief as the Court deems just and proper.

## COUNT II – NEGLIGENT MAINTENANCE

Plaintiff re-alleges and incorporates paragraphs 1 through 28 as though fully set forth herein.

37. At all times material, RCCL owed Plaintiff a duty of reasonable care under the circumstances.

38. That duty included a duty to maintain the Central Park walkways in a reasonably safe condition.

39. RCCL had actual or constructive notice of the dangerous condition, as alleged in paragraphs 21 through 28.

40. RCCL breached its duty through the following acts and omissions:

    a. Failing to inspect the Central Park walkways at reasonable intervals once it began raining;

    b. Failing to dry, squeegee, or otherwise remove rainwater from the walkway where Plaintiff fell;

    c. Allowing rainwater to accumulate and remain on the tile walkway;

    d. Failing to follow its own policies and procedures for monitoring and drying wet walkways; and/or

    e. Failing to maintain the slip resistance of the tile, including by failing to apply, renew, or maintain anti-slip treatment.

41. Had RCCL reasonably inspected and maintained the walkway, the rainwater would have been removed or the tile's slip resistance preserved, and Plaintiff would not have fallen.

42. As a direct and proximate result of RCCL's negligence as alleged in this Count, Plaintiff suffered the injuries and damages described in paragraph 20.

**WHEREFORE**, Plaintiff requests an advisory jury and demands judgment against RCCL for all damages recoverable under the general maritime law, prejudgment interest, taxable costs, and such further relief as the Court deems just and proper.

## COUNT III – NEGLIGENT DESIGN

Plaintiff re-alleges and incorporates paragraphs 1 through 28 as though fully set forth herein.

43. At all times material, RCCL owed Plaintiff a duty of reasonable care under the circumstances.

44. That duty included a duty to design, select, and approve reasonably safe flooring and walkways for the passenger areas of its ships, including Central Park.

45. As alleged in paragraphs 13 through 15, RCCL participated in, controlled, and approved the design of Central Park and the selection and installation of its flooring.

46. RCCL had actual or constructive notice of the dangerous condition, as alleged in paragraphs 21 through 28.

47. RCCL breached its duty through the following acts and omissions:

   a. Selecting and approving tile for an uncovered, open-air walkway that is unreasonably slippery when wet;

   b. Failing to select flooring with adequate slip resistance when wet, consistent with RCCL's own internal flooring standards;

   c. Failing to test the wet slip resistance of the flooring before installing it, in light of the rain and foot traffic RCCL knew the area would receive;

   d. Failing to design canopies, coverings, or other shelter over the main Central Park walkways;

   e. Failing to design adequate drainage and slope to shed rainwater from the walking surfaces; and/or

   f. Failing to retrofit the flooring or walkways after learning of repeated slip-and-fall incidents in Central Park.

48. Had RCCL designed the Central Park walkways with reasonably slip-resistant flooring or protected them from rain, Plaintiff would not have fallen.

49. As a direct and proximate result of RCCL's negligence as alleged in this Count, Plaintiff suffered the injuries and damages described in paragraph 20.

**WHEREFORE**, Plaintiff requests an advisory jury and demands judgment against RCCL for all damages recoverable under the general maritime law, prejudgment interest, taxable costs, and such further relief as the Court deems just and proper.

**COUNT IV – GENERAL NEGLIGENCE**

Plaintiff re-alleges and incorporates paragraphs 1 through 28 as though fully set forth herein.

50. At all times material, RCCL owed Plaintiff a duty of reasonable care under the circumstances.

51. That duty included a duty to adopt and carry out reasonable operational policies, training, and supervision to protect passengers from known hazards aboard its ships.

52. RCCL had actual or constructive notice of the dangerous condition, as alleged in paragraphs 21 through 28.

53. RCCL breached its duty through the following acts and omissions:

    a. Failing to adopt and enforce a rain-response protocol for the open-air Central Park area, such as closing, restricting, or rerouting foot traffic when it rains;

    b. Failing to deploy anti-slip runners or mats on the main Central Park walkways during and after rain;

    c. Failing to station crew in Central Park during rain to keep the walkways dry and redirect passengers;

    d. Failing to monitor weather conditions and its Central Park CCTV feeds so that it could act promptly when rain began;

    e. Failing to train its crew on how to respond when rain makes the open-air decks wet;

    f. Failing to supervise the crew assigned to Central Park to ensure they carried out RCCL's wet-floor procedures;

    g. Failing to account for the heightened risk on embarkation day, when large numbers of passengers unfamiliar with the ship walk through Central Park; and/or

    h. Failing to investigate prior Central Park slip-and-fall incidents across the Oasis class and to implement fleetwide measures to prevent their recurrence.

54. Had RCCL adopted and carried out reasonable rain-response policies, training, and supervision, the Central Park walkway would have been closed, covered with runners, dried, or attended by crew when Plaintiff walked through it, and she would not have fallen.

55. As a direct and proximate result of RCCL's negligence as alleged in this Count, Plaintiff suffered the injuries and damages described in paragraph 20.

**WHEREFORE**, Plaintiff requests an advisory jury and demands judgment against RCCL for all damages recoverable under the general maritime law, prejudgment interest, taxable costs, and such further relief as the Court deems just and proper.

**REQUEST FOR ADVISORY JURY**

56. Notwithstanding the application of this Court's admiralty jurisdiction, Plaintiff hereby requests an advisory jury trial pursuant to the Saving to Suitors Clause of 28 U.S.C. § 1333(1) and Federal Rule of Civil Procedure 39(c)(1). This action is being pursued in this Court, as opposed to state court as otherwise allowed by the Saving to Suitors Clause of 28 U.S.C. § 1333(1), because RCCL unilaterally inserts a forum clause into its cruise tickets that requires its passengers to file cruise-related suits only in this Federal District and Division, as opposed to any other place in the world. Further, RCCL's cruise ticket does not reasonably explain that if the Federal Court does not have diversity jurisdiction, then the case must be brought under the Federal Court's admiralty jurisdiction, which ordinarily does not provide for a jury trial; and, as such, the cruise ticket does not reasonably or adequately communicate the loss of the right to a jury trial in the event diversity jurisdiction does not exist. The Saving to Suitors Clause reserves to suitors "all means other than proceedings in admiralty which may be employed to enforce the right or to redress the injury involved," and "[t]rial by jury is an obvious, but not exclusive, example of the remedies available to suitors." *Lewis v. Lewis & Clark Marine, Inc.*,

531 U.S. 438, 454–55 (2001) (quoting *Red Cross Line v. Atl. Fruit Co.*, 264 U.S. 109, 124 (1924)).

Dated: November 5, 2026.

Respectfully submitted,

LIPCON, MARGULIES
& WINKLEMAN, P.A.
*Attorneys for Plaintiff*
2800 Ponce de Leon Blvd., Suite 1480
Coral Gables, Florida 33134
Tel. (305) 373-3016
Fax (305) 373-6204

By: /s/ Geoffrey Probst
**GEOFFREY PROBST**
Florida Bar No. 505498
gprobst@lipcon.com